IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DARIUS L. PRIGG,                              *

    Plaintiff,                           *

v.                                           *        Civ. No. DLB-23-48

BALTIMORE COUNTY DEPARTMENT                  *
OF CORRECTIONS, *et al.*,
                                             *
    Defendants.

**<u>MEMORANDUM</u>**

Darius L. Prigg, who is proceeding without counsel, filed a civil rights complaint pursuant

to 42 U.S.C. § 1983 against the Baltimore County Department of Corrections, Sgt. Carr, Lt.

McDowell, Director Walt Pesterfield, Sgt. Carter, and Ofc. Austin (the "County defendants"), as

well as nurse practitioner Ben-Daisy and medical liaison Barnes (the "medical defendants"),

alleging they violated his constitutional rights while he was a pretrial detainee at Baltimore County

Detention Center ("BCDC").   ECF 1, 5, 8.[1]   He claims Sgt. Carr and unidentified others

mishandled his mail; Lt. McDowell and unidentified others were deliberately indifferent to an

excessive risk that he would be harmed by other inmates; Director Pesterfield used excessive force

in confining him, denied him visitation, and denied him access to the courts; and Sgt. Carter

subjected him to unsanitary conditions of confinement that included too little recreation and food;

and the medical defendants failed to provide adequate medical care.   In response, the County

defendants moved to dismiss the complaint or, in the alternative, for summary judgment.   ECF 13.

On August 30, 2023, the Court notified Prigg that if he did not respond to the motion, his case

---

[1] The Clerk shall correct the spelling of Officer Austin's name on the docket. *See* ECF 13-1, at 1.
The medical defendants have not been served.

could be dismissed.  To date, Prigg has not filed any response to the County defendants' motion.

No hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2023).  For the reasons stated below, the

County defendants' motion, treated as a motion to dismiss, is granted.

## I.      Background

Prigg alleges that, on several occasions, BCDC staff and Sgt. Carr, who oversaw the mail

department, failed to send mail for him, failed to deliver mail to him, and failed to keep outgoing

mail sealed, in violation of BCDC procedures.  ECF 1, at 2–4.  He states that "[o]n or about June

8th 2022 and November 27th/28th 2022 and continuing through December 2022," he did not

receive mail that he "was told [had been] mailed to [him]" by "numerous friends and family."  *Id.*

at 3.  He added that his "family and friends . . . start[ed] tracking the mail and when they did, the

mail would be delivered to the facility but never given to [him]."  *Id.*  He states that Sgt. Carr failed

to provide "a valid reason" that Prigg did not receive his mail.  *Id.*  Prigg alleges that, on November

20, 2022 and another unspecified date, he tried to mail an envelope with legal mail inside another

envelope so that the inner envelope could be "served by a 3rd party," but the mail department

opened both envelopes and returned them to him.  *Id.* at 4.  He believes that someone in the mail

department is an informant for the state.  *Id.*

Prigg states that he fears for his life at BCDC because the staff "don't care about [his] well-

being."  ECF 1, at 4.  He believes that, because he suffers from mental illnesses, including paranoia

and post-traumatic stress disorder, he is at risk of harm.  *Id.*  He claims that on December 20, 2022,

he told Lt. McDowell that he feared for his safety and wanted to be removed from the unit because

he was uncomfortable, manic, and had extreme anxiety from "being approached by inmates [he]

did not know."  *Id.* at 4–5.  Prigg also told Officer Randolph that he feared for his safety and

wanted to be moved; Randolph agreed to transfer him to a different unit.  *Id.* at 5.  When Lt.

McDowell discovered that Prigg had moved, he told Prigg he had to return to his original unit or receive a ticket and go to lockup, stating that "he didn't care" if Prigg did not feel safe there. *Id.* Prigg took the ticket and went to lockup. *Id.*

Prigg alleges that Director Pesterfield used excessive force by imposing a pandemic policy that included confinement to a cell for more than 16 hours a day. ECF 5, at 1. He states that Director Pesterfield denied him access to grooming supplies, provided only small portions of undercooked food, and restricted his recreation and visitation privileges. *Id.* at 2, 3.

Prigg also claims that Sgt. Carter used excessive force by imposing 20 days' lockup after a November 30, 2022 incident and 10 days' lockup after a December 20, 2022 incident, during which he was held in "unsanitary and intolerable living conditions." ECF 5, at 1. Prigg alleges that, as a result, he contracted a staph infection that was not treated for more than two weeks. *Id.* at 1–2. He claims the restricted housing unit showers are dirty with mold and grime and that the tier is covered in dirt, dust, trash, and bodily fluids, including human feces on the food slots. *Id.* at 2. Prigg was also subjected to 24-hour lighting, limited to one-hour walks, and deprived of phone and recreation time. *Id.*

Prigg alleges he filed a sick call request regarding the infection he contracted in lockup, and no one responded to the request for three weeks. ECF 8, at 4. Two weeks after he filed his request, medical liaison Barnes was on rounds in Prigg's restricted housing unit, and Prigg told Barnes he was breaking out in hives and blisters all over his body and no one had responded to his sick call request. *Id.* at 4–5. Prigg claims Barnes said they would let the nurse practitioner know, and several days later nurse practitioner Ben-Daisy told him that his request had not been received and that she could not do anything for his rash. *Id.* at 5. Prigg states that the rash continues to breakout frequently and leaves scars, but he never received any medical treatment. *Id.*

Finally, Prigg claims that, while housed at BCDC, Director Pesterfield has denied him full access to the law library, which Officer Austin oversees. ECF 5, at 2; ECF 8, at 6. He alleges that BCDC allows only four law library requests per week, and often "the wrong case laws are sent back" or the case law he requests is "not said to be found." ECF 5, at 2. Prigg states that, when he wanted to appeal a bail review decision, the library staff failed to provide him with the form for an application for leave to appeal before his 10-day filing deadline passed and, as a result, his motion for bail review was dismissed and he was not released from custody. ECF 8, at 6.

## II.      Standard of Review

The County defendants move to dismiss the complaint for failure to state a claim, or alternatively, for summary judgment. Typically, if the Court's review extends beyond the pleadings, documents attached to the complaint, and the parties' briefs, the Court must treat the motion as one for summary judgment. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c). The Court need not consider matters outside the pleadings to resolve this motion. Therefore, the motion is treated as a motion to dismiss. *See* Fed. R. Civ. P. 12(b)(6), 12(d).

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)). But the claim does not need to be probable, and

the pleader need not show "that alternative explanations are less likely" than their theory.  *Jesus Christ is the Answer Ministries, Inc. v. Balt. Cnty., Md.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader.  *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022).  But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments."  *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)).  Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard."  *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 212 (4th Cir. 2019)).  The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."  *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

"[P]ro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'"  *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  Accordingly, the Court must construe *pro se* pleadings liberally.  *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021).  But "liberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff[;]'" the Court need only "determine the actual meaning of the words used in the complaint."  *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)).  Thus, a *pro se* complaint "still 'must contain enough facts to state a claim for relief that is plausible on its face.'"  *Thomas v. The Salvation Army S.*

*Territory*, 841 F.3d 632, at 637 (4th Cir. 2016) (quoting *King v. Rubenstein*, 825 F.3d 206, 212, 214 (4th Cir. 2016) (quoting *Twombly*, 550 U.S. at 570)).

**III.     Discussion**

The United States Code provides a federal cause of action for any individual who believes a state actor has deprived him or her of a constitutional right.  *See* 42 U.S.C. § 1983; *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 707 (1999).  The statute "is not itself a source of substantive rights, but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Two elements are essential to state a claim under § 1983: (1) plaintiff must have suffered a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the United States; and (2) the act or omission causing the deprivation must have been committed by a person acting under color of law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

A defendant's own action—or failure to act—is required for liability under § 1983.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).  There is no *respondeat superior* liability under § 1983.  *Love-Lane*, 355 F.3d at 782.  Supervisors like Director Pesterfield, Sgt. Carr, Sgt. Carter, Lt. McDowell, and Ofc. Austin may be found liable only if the plaintiff shows they "acted personally in the deprivation of the plaintiff['s] rights."  *Vinnedge*, 550 F.2d at 928 (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md.), *aff'd*, 451 F.2d 1011 (4th Cir. 1971)).

Moreover, to state a claim for supervisory liability under § 1983 based on a subordinate's conduct, the plaintiff must allege that (1) the supervisor had actual or constructive knowledge that a subordinate's conduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) the supervisor responded in a manner that was so inadequate that it

showed "deliberate indifference to or tacit authorization" of the subordinate's conduct; and (3) there was "an affirmative causal link between the supervisor's inaction" and the plaintiff's constitutional injury. *Timpson ex rel. Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).[2]

## A. Mail

Prigg claims Sgt. Carr and BCDC staff (1) failed to deliver non-legal mail to him on several occasions, (2) regularly opened his outgoing non-legal mail, and (3) opened and failed to deliver his legal mail twice. ECF 1, at 3–4. As the County defendants read Prigg's complaint, he has tried to allege a Fourteenth Amendment due process claim. From that premise, they argue they are entitled to dismissal of his claims because Prigg fails to allege that they were deliberately indifferent or that Sgt. Carr was personally involved. ECF 13-1, at 4–5. But as the Court reads his complaint, Prigg's claims for interference with his mail are brought under the First Amendment, incorporated through the Fourteenth Amendment.

Pretrial detainees have a limited First Amendment right to send and receive mail, but that right that "may be restricted in the interest of prison security." *See Hause v. Vaught*, 993 F.2d 1079, 1081–82 (4th Cir. 1993); *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). "[W]hen a prison regulation impinges on inmates' [or detainees'] constitutional rights, the regulation is valid if it is

---

[2] Prigg's claims against the Baltimore County Department of Corrections must be dismissed. The Department of Corrections is not a "person" and therefore cannot be found liable under § 1983. *See Kelly v. Conmed Healthcare Servs.*, No. PWG-18-1441, 2019 WL 3817261, at *3 (D. Md. Aug. 13, 2019) ("Howard County Department of Corrections is not a 'person' and therefore is 'not a proper defendant in a 42 U.S.C. § 1983 action.'"); *Seltzer v. Howard Cnty. Det. Ctr.*, No. GLR-16-1225, 2017 WL 772284, at *1 (D. Md. Feb. 28, 2017) (same); *see also* 42 U.S.C. § 1983 (imposing liability for constitutional violations committed by "person" acting under color of state law); *West v. Atkins*, 487 U.S. 42, 48 (1988) (noting an element of § 1983 claim is that "person" acting under color of state law committed the violation). The claims against the Department of Corrections are dismissed with prejudice. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (dismissal with prejudice is appropriate when claim is futile).

reasonably related to legitimate penological interests." *Hause*, 993 F.3d at 1082 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Prigg fails to state a claim based on the County defendants' alleged failure to deliver mail to him when his family and friends told him mail had been sent to him.  His vague allegations do not identify either the sender or the contents of the mail.  Moreover, Prigg does not name a proper defendant for this claim.  He blames supervisor Sgt. Carr and BCDC staff.  ECF 1, at 2–3.  As for Sgt. Carr, Prigg does not allege he "acted personally in the deprivation of [his] rights."  *See Vinnedge*, 550 F.2d at 928 (quoting *Bennett*, 323 F. Supp. at 214).  His allegation that Sgt. Carr "probably" was the one who interfered with his mail is conclusory.  And Prigg does not allege that Sgt. Carr knew about the problems with his mail delivery and failed to address them.  Therefore, Prigg has not stated a claim for interference with his mail against Sgt. Carr.  *See Timpson*, 31 F.4th at 257; *Shaw*, 13 F.3d at 799.  His claims against unidentified BCDC staff fail because "using the term 'staff' or the equivalent as a name for alleged defendants, without naming specific staff members, is insufficient to state a claim against a 'person' in a § 1983 action."  *St. Rose v. Baltimore Cnty. Det. Ctr.*, No. JKB-23-1031, 2023 WL 3454590, at *1 (D. Md. May 15, 2023) (citing *Harden v. Green*, 27 F. App'x 173, 178 (4th Cir. 2001)).  Thus, Prigg has not stated a claim against any other BCDC staff either.  *See id.*  This claim is dismissed without prejudice.

Prigg also fails to state a First Amendment claim based on the opening of his outgoing non-legal mail.  Prison officials may open and inspect an inmate or detainee's outgoing mail because doing so "is reasonably related to legitimate penological interests"—the interest in removing "materials detrimental to the security, good order, and discipline of the institution, or dangerous to the public."  *Altizer v. Deeds*, 191 F.3d 540, 547–48 (4th Cir. 1999); *see also Matherly v. Andrews*, 859 F.3d 264, 283 (4th Cir. 2017) ("[T]he BOP can, consistent with the First Amendment, censor

8

outgoing non-legal mail for material that either threatens the public or stymies the treatment of Adam Walsh Act detainees."). Prigg alleges the defendants opened his outgoing non-legal mail. This is not a First Amendment violation. Therefore, this claim is dismissed with prejudice because amendment would be futile.

Prigg also fails to state a claim based on interference with his legal mail on two occasions. "[P]olicies concerning legal mail require heightened scrutiny, but isolated incidents of mishandling of mail do not state a claim." *Barnes v. Wilson*, 110 F. Supp. 3d 624, 632 (D. Md. 2015); *accord Buie v. Jones*, 717 F.2d 925, 926 (4th Cir. 1983). Prigg alleges isolated incidents of mishandling of legal mail. This claim is dismissed without prejudice.

**B. Failure to Protect**

The County defendants contend that Prigg's failure to protect claim should be dismissed because Prigg fails to allege their deliberate indifference. ECF 13-1, at 6.

"The Eighth Amendment protects prisoners from 'unnecessary and wanton infliction of pain.'" *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)). Under the Eighth Amendment, prison officials must "take reasonable measures to guarantee the safety of . . . inmates." *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 319–20 (1986)). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The protections afforded convicted prisoners under the Eighth Amendment extend to pretrial detainees through the Due Process Clause of the Fourteenth Amendment. *Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243-44 (1983)). Accordingly, the deliberate indifference standard applies "where prison officials are accused of

deliberate indifference to a substantial risk of serious harm to prison inmates" or pretrial detainees. *See Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (citing *Young*, 238 F.3d at 575).

To state a claim for failure to protect from attack by another detainee, a pretrial detainee first must allege an objectively "serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014). This inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). Then, as for any Fourteenth Amendment claim, the plaintiff must allege that the injury or risk of injury resulted from the defendant's action or inaction, and that "the 'governmental action' they challenge" is not 'rationally related to a legitimate nonpunitive governmental purpose' or is 'excessive in relation to that purpose.'" *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (quoting *Bell v. Wolfish*, 441 U.S. 520, 561 (1979)) (internal quotation marks omitted). *Id.* at 611. A pretrial detainee can state a Fourteenth Amendment claim "on [a] purely objective basis" because "*Kingsley*'s objective test extends to all pretrial detainee claims under the Fourteenth Amendment . . . for deliberate indifference to an excessive risk of harm." *Id.* at 610–11.

Prigg does not state a failure-to-protect claim. He does not allege that he suffered a significant injury or was at a substantial risk of one. What he does allege—that he suffered anxiety about being approached by unknown inmates on his tier—is not an objectively serious injury. Moreover, Prigg has not alleged that any of the unidentified inmates who may have approached him threatened to harm him. Consequently, it would not "violate[] contemporary standards of

10

decency to expose" him to the company of unidentified detainees who have not threatened him. *See Helling*, 509 U.S. at 36.  Even if it would, Prigg does not allege the defendants' action or inaction caused his injury.

Prigg's Fourteenth Amendment claim against Lt. McDowell and the other County defendants is dismissed without prejudice.

### C.  Conditions of Confinement

Prigg alleges that the conditions of confinement in lockup were "unsanitary," with mold in the showers, dirt and bodily fluids in the housing unit, and feces on the food slot, and that these conditions caused him to contract a staph infection.  ECF 5, at 1–2.  Prigg also alleges that Sgt. Carter used "excessive force" when he placed Prigg in lockup, but Prigg does not provide any factual allegations in support of an excessive force claim.  *See id.*  The Court construes this allegation to mean Sgt. Carter exposed him to unsanitary conditions of confinement in violation of his Fourteenth Amendment rights.  The County defendants argue that Prigg does not allege that Sgt. Carter—or any other defendant—was deliberately indifferent when they failed to address the conditions in lockup.  ECF 13-1, at 7–9.

Conditions that "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment in violation of the Eighth Amendment.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  The protections afforded convicted prisoners under the Eighth Amendment extend to pretrial detainees through the Due Process Clause of the Fourteenth Amendment because due process proscribes punishment of a detainee before a proper adjudication of guilt.  *See Bell v. Wolfish*, 441 U.S. 520, 545 (1979).  "[N]ot every inconvenience encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988) (citing *Bell*, 441 U.S. at 538–40).  To state a § 1983 claim based

on unconstitutional conditions of confinement, a pretrial detainee must allege "that the condition or restriction was imposed with an express intent to punish or was not reasonably related to a legitimate nonpunitive government objective." *Timms v. U. S. Att'y Gen.*, No. 22-6338, 2024 WL 591896, at *3 (4th Cir. Feb. 14, 2024) (citing *Matherly v. Andrews*, 859 F.3d 264, 275 (4th Cir. 2017)); *see also Short*, 87 F.4th at 611 (noting plaintiff can state a claim based on a "governmental action" that "is not 'rationally related to a legitimate nonpunitive governmental purpose' or is 'excessive in relation to that purpose'"). Simply put, "it is sufficient that the plaintiff show that the defendant's action or inaction was . . . objectively unreasonable.'" *Short*, 87 F.4th at 611 (quoting *Kingsley*, 576 U.S. at 397).

Prigg does not allege that Sgt. Carter or any other defendant violated his Fourteenth Amendment rights. He alleges that Sgt. Carter took one action: She placed him in lockup. But he does not state why he was placed in lockup or allege that lockup itself was "not 'rationally related to a legitimate nonpunitive governmental purpose' or [wa]s 'excessive in relation to that purpose.'" *See Short*, 87 F.4th at 611. As for the conditions in lockup, Prigg does not allege that Sgt. Carter had actual or constructive knowledge of the dirty and unsanitary conditions of confinement. Nor does he allege that Sgt. Carter or her subordinates were responsible for the conditions of the showers. And he does not allege that any of the other defendants "acted personally in the deprivation of [his] rights" by placing him in lockup or failing to maintain sanitary conditions in lockup. *See Vinnedge*, 550 F.2d at 928. Therefore, he fails to state a claim against Sgt. Carter or any other defendant based on the conditions of confinement. *See id.*; *Love-Lane*, 355 F.3d at 782; *Timpson*, 31 F.4th at 257. The claim is dismissed without prejudice.

12

### D.  Access to Courts

The County defendants argue that Prigg's access to courts claim is insufficient because he fails to allege their specific involvement.

Prisoners have a constitutionally protected right of access to the courts, pursuant to which they must be afforded a "reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *See Lewis v. Casey*, 518 U.S. 343, 350, 356 (1996) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977), and narrowing the holding in *Bounds*).  This right "guarantees . . . the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts," not a "particular methodology" for bringing claims. *Id*. at 355–56.  To state a claim for denial of access to courts, a plaintiff must allege "'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355); *see Lewis*, 518 U.S. at 351–52.  That is, the plaintiff must allege that the defendants "frustrated or . . . impeded" a "nonfrivolous legal claim." *Lewis*, 518 U.S. at 353.  And, the plaintiff "must . . . identify an actual injury resulting from [that] official conduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (citing *Strickler v. Waters*, 989 F.2d 1375, 1382–85 (4th Cir. 1993)); *see also Pronin v. Johnson*, 628 F. App'x 160, 161 (4th Cir. 2015) (noting "a prisoner must demonstrate that he suffered an actual injury, such as missing a court-imposed deadline or being unable to file a complaint because o*f* the Defendants' actions" (citing *Lewis*, 518 U.S. at 351–52)).

The right of access "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  "It follows that the underlying cause of action, whether anticipated or lost, is an element

that must be described in the complaint, just as much as allegations must describe the official acts

frustrating the litigation." *Id.* The description of the predicate claim must be sufficient to allow

an assessment of whether it was "nonfrivolous" or "arguable."

Here, Prigg alleges that, because the defendants did not give him a court form he requested,

he was unable to timely file a motion for bail review. But the Court cannot discern from his

allegations whether his motion for bail review was "nonfrivolous" or "arguable." *See Christopher*,

536 U.S. at 415. Moreover, Prigg does not allege any specific wrongdoing by either Austin or

Director Pesterfield. Prigg alleges that Director Pesterfield denied him full access to the law library

and that Austin oversees the law library, but he does not allege that either was personally

responsible for, or knew about, the delay in providing him the form necessary to file his bail review

motion. Prigg's access to courts claim is dismissed without prejudice.

### E. Additional Allegations against Director Pesterfield

Prigg makes various allegations against Director Pesterfield regarding issues with hours of

confinement, access to grooming supplies, nutritious meals, recreation time, and visitation

privileges. However, none of his allegations rises above the speculative level. He does not

provide any facts to support a constitutional claim against Director Pesterfield. Accordingly, these

allegations are dismissed without prejudice for failure to state a claim.

The County defendants' motion to dismiss is granted.

### IV. Medical Defendants

The remaining defendants are nurse practitioner Ben-Daisy and medical liaison Barnes,

neither of whom has been served. Regardless, because Prigg proceeds *in forma pauperis*, the Court

shall review Prigg's claims against them under 28 U.S.C. § 1915, which requires dismissal of any

14

claim which is (i) frivolous or malicious, (ii) fails to state a claim for relief, or (iii) seeks monetary

relief against a defendant who is immune from suit.  28 U.S.C. § 1915(e)(2)(B).

Prigg alleges that Barnes and Ben-Daisy failed to treat a rash related to a staph infection

he contracted while he was in lockup.  "[D]eliberate indifference to the serious medical needs of a

pretrial detainee violates the Due Process Clause" of the Fourteenth Amendment.  *Young v. City*

*of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) (citing *City of Revere v. Mass. Gen. Hosp.*, 463

U.S. 239, 243–44 (1983)); *see also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998)

(concluding that, because "deliberately indifferent conduct" is sufficient for liability under the

Eighth Amendment, it "must also be enough to satisfy the fault requirement for due process claims

based on the medical needs of someone jailed while awaiting trial"); *Estelle v. Gamble*, 429 U.S.

97, 104 (1976) (holding any "deliberate indifference to serious medical needs of prisoners

constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment")

(quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  To state a claim for deliberate indifference

to his medical needs, a pretrial detainee like Prigg must allege:

> (1) they had a medical condition or injury that posed a substantial risk of serious
> harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act
> to appropriately address the risk that the condition posed; (3) the defendant knew
> or should have known (a) that the detainee had that condition and (b) that the
> defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as
> a result, the detainee was harmed.

*Short*, 87 F.4th at 611.  Thus, pretrial detainees can "state Fourteenth Amendment claims for

deliberate indifference to a serious risk of harm on the purely objective basis that the

'governmental action' they challenge is not 'rationally related to a legitimate nonpunitive

governmental purpose' or is 'excessive in relation to that purpose.'"  *Id.* (quoting *Kingsley*, 576

U.S. at 398).  While "it is sufficient that the plaintiff show that the defendant's action or inaction

was . . . 'objectively unreasonable,' that is, the plaintiff must show that the defendant should have

15

known of that condition and that risk, and acted accordingly," it is "not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee." *Id.* at 611–12 (quoting *Kingsley*, 576 U.S. at 397) (internal citation omitted).

Prigg fails to state a claim against Barnes. He alleges that Barnes visited his unit and asked if anyone had any medical concerns, he informed Barnes of his condition, and Barnes promised to inform a nurse practitioner. ECF 8, at 4–5. He also alleges that "several days later," he was seen by a nurse practitioner. *Id.* at 5. He does not allege that Barnes did anything "objectively unreasonable." His claim against Barnes is dismissed without prejudice.

The Court will not dismiss Prigg's claim against Ben-Daisey, who Prigg says told him she could not help him when his body was covered in hives and blisters. ECF 8, at 5. Therefore, the Court will order the Clerk to make a second attempt to serve defendant Ben-Daisy.

## V.    Conclusion

The County defendants' motion to dismiss or, alternatively, for summary judgment, treated as a motion to dismiss, is granted. The claims against the County defendants are dismissed. The claim against Barnes is dismissed pursuant to 28 U.S.C. § 1915(e)(ii) for failure to state a claim. The Clerk shall be directed to serve defendant Ben-Daisy in a separate order to follow.

 March 8, 2024
Date                                                                    Deborah L. Boardman
                                                                        United States District Judge